ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice,
for the Court:
¶ 1. A patient sued his dentist, claiming she negligently administered anesthesia, resulting in pain, swelling, and nerve damage. The trial court granted the dentist a directed verdict because the patient’s expert failed to state the applicable standard of care. The Court of Appeals reversed and remanded. Because we find no error in the trial court’s decision, we reverse the Court of Appeals’ judgment and affirm the trial court’s grant of directed verdict.
*177 FACTS AND PROCEDURAL HISTORY
¶ 2. In December 2004, Bennie Braswell visited his dentist, Dr. Beth Stinnett, for a “deep scalling [sic] and root plaining [sic]” procedure. Because this procedure requires cleaning below the gumline, Dr. Stinnett injected Braswell with an anesthetic which, according to Braswell, was “excruciating.”
¶ 8. Braswell testified that, the night following the procedure, his face began to swell, his mouth continued to hurt, and the right side of his face swelled to twice its normal size. While this swelling lasted only a month, Braswell claimed he suffered permanent damage, including the loss of feeling in his upper right lip and nostril, slurred speech from time to time, and an occasional stinging pain in his lips. Bras-well testified that he no longer can drink from a cup, whistle for his dogs, or feel a kiss.
¶ 4. Braswell employed Dr. Martin Harris Turk — an oral and maxillofacial surgeon — to give expert testimony at trial. Braswell’s attorney asked Dr. Turk whether he was licensed in any state; to everyone’s surprise — including Braswell’s attorney — Dr. Turk answered “no.” Dr. Stinnett’s attorney immediately objected to Dr. Turk’s qualifications, and the trial judge stopped the proceedings and met with the parties in chambers.
¶ 5. The trial judge — noting that he had never qualified an unlicensed expert — recessed to allow the parties to research the law regarding expert testimony and licen-sure. The lawyers were unable to find precedent on the issue and, over Dr. Stin-nett’s objection, the trial judge decided to accept Turk as an expert regardless and see “what shakes out.”
¶ 6. After his direct testimony, but prior to being cross-examined, Dr. Turk met privately with Braswell’s attorney during a break in the proceedings. After the break, Dr. Stinnett’s attorney moved to exclude Dr. Turk’s testimony for improper contact with an attorney before cross-examination. The trial judge again met with the parties in chambers, and Dr. Turk stated that he and the attorney had discussed only his failure to mention the drug content of the local anesthesia used. Bras-well’s attorney stated that she had met with Dr. Turk to ask him why he had never said anything before trial about being unlicensed.
¶ 7. Initially, the trial judge planned to strike Dr. Turk’s testimony, but instead allowed Braswell’s attorney time to provide research on the improper-contact issue. The following day, the trial judge decided not to strike Dr. Turk’s testimony, but warned that Dr. Stinnett’s attorneys were “entitled to ... full bore cross-examination.”
¶ 8. At the end of Braswell’s case-in-chief, Dr. Stinnett moved for a directed verdict, arguing that Dr. Turk was unlicensed and unqualified to give an expert opinion; and that, without an expert opinion, Braswell had failed to make out a prima facie case of professional malpractice. Dr. Stinnett argued alternatively that Dr. Turk had failed to testify to the standard of care. The trial judge agreed that Dr. Turk had failed to establish the standard of care and granted Dr. Stin-nett’s motion for directed verdict.
¶ 9. Braswell appealed, and the Court of Appeals reversed and remanded for a new trial. We granted Dr. Stinnett’s petition for writ of certiorari.
ANALYSIS
¶ 10. We conduct a de novo analysis of a trial court’s resolution of mo *178 tions for directed verdict.[1] A directed verdict is appropriate when the moving party — in this case, Dr. Stinnett — is entitled to judgment as a matter of law.[2] For purposes of our review, we consider all evidence in the light most favorable to the nonmoving party, and we view all reasonable inferences in that party’s favor.[3]
¶ 11. To establish dental[4] malpractice, a plaintiff must — as a matter of law — produce expert testimony to establish a prima facie case.[5] The expert must establish the “requisite standard of care” and that the defendant “failed to conform to [that] standard.”[6] The standard of care in medical negligence cases is measured against a doctor of minimum competence:
Given the circumstances of each patient, each physician has a duty to ... treat ... each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States.... [7]
¶ 12. A careful reading of Dr. Turk’s testimony reveals that he established neither the requisite standard of care nor a breach of it. He testified as follows:
A. Generally you deposit your anesthetic two or three millimeters above the tooth if that’s the purpose of what was going to happen that day, the scaling and the root plaining [sic]. All that is standard. To injure the nerve that’s up here[,] one of two things has to happen. Either the dentist lost her orientation or she wasn’t watching what [s]he was doing. There is no other way the needle could have been up there because that is not the standard of care. That is how the nerve was injured.
[[Image here]]
Q. After reviewing your records ... did you form an opinion as to whether or not Dr. Stinnett breached her duty of care in the treatment of Bennie Braswell?
A. Yes, I did.
Q. What is that opinion?
A. My opinion is she deviated from good dental practice,[8]
[[Image here]]
Q. There is no opinion in that disclosure that you are looking at that talks about Dr. Stinnett becoming disoriented when she was giving the local injection; isn’t that correct?
A. I never said she was disoriented.
Q. Thank you, Doctor. There’s not one word in that disclosure nor in your report that Dr. Stinnett was not paying attention carefully when she gave these local injections; isn’t that correct?
A. That’s correct.
Q. Dr. Turk, what technique did Dr. Stinnett use to anesthetize this patient’s teeth?
*179 A. The standard I would assume. I wasn’t there, so I can’t tell you exactly. I can tell you the standard technique.
Q. Where did Dr. Stinnett put the needle?
A. She indicated that she used either four or six injections, and I can’t tell you exactly where she put the needle.
Q. It would be hard for you to know where at the [sic] put the needle, right?
A. I have no clue.
¶ 13. This testimony falls far short of establishing the standard of care, and that Dr. Stinnett breached it. Our law imposes a duty on dentists and physicians to “treat ... each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States....”[9]
¶ 14. Dentists are not required to do what is generally done, or what the average dentist would do. And our law certainly does not require dentists to conform to a vague, subjective standard such as good dental practice. Instead, our law requires a plaintiff to establish — through a qualified expert — what is required of a minimally competent dentist, “whose skills and knowledge are sufficient to meet the licensure or certification requirements for the profession or specialty practiced.” [10]
CONCLUSION
¶ 15. Because the plaintiffs expert failed establish the standard of care — or any breach of it — we reinstate and affirm the trial court’s grant of directed verdict in the defendant’s favor, and we reverse the Court of Appeals’ judgment.
¶ 16. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY.

. Thompson v. Nguyen, 86 So.3d 232, 236 (Miss.2012).

. Id.

. Id.

. Newport v. Hyde, 244 Miss. 870, 147 So.2d 113 (1962) (holding that the standard of care for a dentist is the same as for a physician).

. Starcher v. Byrne, 687 So.2d 737, 740 (Miss.1997).

. McCaffrey v. Puckett, 784 So.2d 197, 206 (Miss.2001).

. Estate of Northrop v. Hutto, 9 So.3d 381, 384 (Miss.2009) (citing Palmer v. Biloxi Reg’l Med. Ctr., 564 So.2d 1346, 1354 (Miss.1990)).

. (Emphasis added).

. Northrop, 9 So.3d 381, 384 (Miss.2009) (citing Palmer, 564 So.2d 1346, 1354 (Miss.1990)).

. McCarty v. Mladineo, 636 So.2d 377, 381 (Miss.1994).