# IN THE COURT OF APPEALS 10/29/96

# OF THE

# STATE OF MISSISSIPPI


**NO. 94-CA-00807 COA**


**DOROTHY COLEMAN**

**APPELLANT**


**v.**


**PAUL RICE, M.D. AND CARL REDDIX, M.D.**

**APPELLEES**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. HON. ROBERT LEWIS GIBBS

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

ARTHUR F. JERNIGAN

REUBEN V. ANDERSON

ATTORNEYS FOR APPELLEES:

MILDRED M. MORRIS

WALTER T. JOHNSON

NATURE OF THE CASE: MEDICAL MALPRACTICE

TRIAL COURT DISPOSITION: SUMMARY JUDGMENT GRANTED IN FAVOR OF DEFENDANTS DR. PAUL RICE AND DR.CARL REDDIX


EN BANC.

DIAZ, J., FOR THE COURT:


The Appellant, Dorothy Coleman (Coleman), filed suit for damages from severe complications suffered as the result of a laparotomy sponge being left in her abdominal cavity during a hysterectomy. The complaint was filed against both surgeons who participated in the surgery and against the hospital where the surgery was performed. The claim against the hospital was a *respondeat superior* action alleging that the assisting nurses, furnished by the hospital and charged with responsibility for conducting sponge counts at various stages of the procedure, negligently failed to account for all sponges before the patient's incision was closed. The lower court granted summary judgment in favor of the surgeons. Coleman filed an interlocutory appeal from the ruling pursuant to Mississippi Rule of Civil Procedure 54(b). Therefore, the issue of the negligence of the hospital staff is not directly before us at this time.

FACTS

In July 1992, Coleman was treated for uterine fibroids by Dr. Paul Rice (Dr. Rice). After some consultation, Coleman decided to have a total hysterectomy. Dr. Rice performed the hysterectomy on July 8, 1992 with the assistance of Dr. Carl Reddix (Dr. Reddix). During the procedure, the doctors used lap sponges to pack the bowels away from the area that they were working on, as well as to soak up fluid and blood. Coleman was discharged three days after her surgery.

Coleman developed complications from the surgery that required her to return to Dr. Rice in October 1992. Dr. Rice decided to perform a posterior laparotomy to determine the extent of Coleman's medical problems. This procedure was performed by Dr. Rice with the assistance of Dr. Helen Barnes. It was not until their incision that the doctors discovered that a 12 x12 inch lap sponge had been left in Coleman's body. Drs. Rice and Barnes attempted to remove both the abcess that had developed and the sponge, but they had to recruit the assistance of general surgeon, Dr. Harvey Sanders. Dr. Sanders completed the surgery which entailed draining the abcess, removing the sponge, removing part of Coleman's small and large intestine, removing a portion of her colon, and a colostomy. Portions of Coleman's small intestine had to be removed because Dr. Sanders discovered holes in it. In December 1992, Coleman underwent a third surgical procedure to reverse the colostomy.

Coleman filed a complaint against Drs. Rice and Reddix, as well as the hospital in October 1993. Drs. Rice and Reddix filed a motion for summary judgment and supported the motion with expert

affidavits contending that the doctors complied with the appropriate standard of care. Relying on the "layman exception" to the general rule, Coleman filed her response without any expert affidavits. After a hearing, the lower court granted summary judgment in favor of Dr. Rice and Dr. Reddix.

DISCUSSION

During an operation, a patient entrusts his body and life into the hands and skills of the surgeon. If a foreign object is inadvertently left in the patient's body, there is no need for an expert in the field to establish that the surgeon was negligent. The court in such an instance can find negligence as a matter of law for an act that obviously falls below the requisite standard of care. *Rudeck v. Wright*, 709 P.2d 621, 626 (Mont. 1985).

Several jurisdictions including Mississippi have either held or alluded to the fact that a foreign object unintentionally left in the patient after surgery is negligence per se, and therefore, liability cannot be relieved. *See Buzan v. Mercy Hosp., Inc.*, 203 So. 2d 11, 12 (Fla. Dist. Ct. App. 1967); *Laws v. Harter*, 534 S.W.2d 449, 451 (Ky. Ct. App. 1975); *Tyler v. Touro Infirmary*, 223 So. 2d 148, 222-23 (La. 1969) (overruled on other grounds); *Guilbeau v. St. Paul Fire & Marine Insurance Co.*, 325 So. 2d 395, 396 (La. Ct. App. 1975); *Saucier v. Ross*, 73 So. 49, 50 (Miss. 1916); *Rudeck*, 709 P.2d at 626; *Harrison v. Wilkerson*, 405 S.W.2d 649, 651 (Tenn. Ct. App. 1966); *Conrad v. Lakewood Gen. Hosp.*, 410 P.2d 785, 787 (Wash. 1966). The often cited rule is, "a surgeon undertaking to perform an operation requiring the placing of sponges in the incision does not complete his undertaking until the sponges are properly removed . . . Thus, there are many cases which take the view that the failure of a surgeon to remove all sponges or foreign substances from a surgical wound is negligence per se." 61 Am. Jur. 2d *Physicians and Surgeons* § 258, at 397-98 (1981).

Particularly dispositive to the present case is the case of *Long v. Sledge*, where the surgeon left an eight-inch-long hemostat in the patient after surgery. *Long v. Sledge*, 209 So. 2d 814, 816 (Miss. 1968). In that case, the lower court granted a motion for JNOV in favor of the patient. As a result, a second trial was held only to determine the amount of damages recoverable. In *Long*, the court held that the surgeon's failure to remember removing the hemostat constituted negligence; therefore, the trial court correctly granted Sledge's motion for JNOV. *Long*, 209 So. 2d at 819. In *Guilbeau v. St. Paul Fire & Marine Insurance Co.*, the patient was granted a judgment against the surgeons who operated on him when a laparotomy pad was not removed from him during surgery. The facts showed in *Guilbeau*, that at the conclusion of the surgical procedure, and before the surgeon began closing the surgical incision, two nurses jointly conducted a count of all the instruments, sponges, and pads used during the surgical procedure. *Guilbeau*, 325 So. 2d at 396. At the time, the counts indicated that all items were present. *Id.* After being released from the hospital, the patient continued to suffer from nausea and vomiting. *Id.* He was readmitted about one month after the surgery. *Id.* At the time, he had a dark drainage from the wound, and there was evidence of a small bowel obstruction. *Id.* X-rays indicated that a laparotomy pad was left in the patient from the surgery. *Id.* The appeals court upheld the judgment stating:

> The general rule . . . is that a surgeon's failure to remove a sponge or pad before closing an incision may be regarded as negligence per se, and some authorities hold that the surgeon cannot relieve himself from liability for injury to a patient caused by leaving sponges or pads by reliance on a custom or rule requiring the attending nurse to count the

sponges or pads used and removed, and on the nurse's statement as to the count.

*Guilbeau*, 325 So. 2d at 397 (citations omitted).

Dr. Reddix argues that he should not be charged with negligence in this case because as assisting surgeon, he had already left the operating room when the closing procedure took place. Based on the present facts, it does not seem that Dr. Reddix's responsibilities were materially different from that of Dr. Rice. As physicians conducting the operation, both undertook a duty to the patient to refrain from negligently injuring her and both affirmatively elected to rely upon an independently conducted counting process to determine that no sponges were left in the patient. This standard of negligence per se must apply to both doctors who participated in the operation. *See Conrad*, 410 P.2d at 787-88. An assisting surgeon who was present during the operation cannot escape liability by claiming that he was not negligent in placing or removing sponges merely because he left the operating room before the closing procedure.

This Court concludes that the evidence presented is sufficient to establish that the surgeons were negligent per se without the necessity of expert testimony. Therefore, we reverse the decision of the circuit court. We must stress that on remand, the Appellant must still present proof of damages against Dr. Rice and Dr. Reddix before she is allowed to recover from either one or both doctors. It is for the reasons stated above that we reverse this case and remand the cause back to the circuit court for further proceedings consistent with this opinion.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT IN FAVOR OF DOCTOR PAUL RICE AND DOCTOR CARL REDDIX IS REVERSED AND THIS CAUSE IS REMANDED FOR A TRIAL FOR DETERMINATION OF DAMAGES ONLY. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES, DOCTOR RICE AND DOCTOR REDDIX.**

**THOMAS, P.J., BARBER, COLEMAN, KING AND PAYNE, JJ., CONCUR.**

# IN THE COURT OF APPEALS 10/29/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 94-CA-00807 COA

**DOROTHY COLEMAN**

**APPELLANT**

**v.**

**PAUL RICE, M.D. AND CARL REDDIX, M.D.**

**APPELLEES**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

McMILLIN, J., CONCURRING IN PART, DISSENTING IN PART:

I agree with the majority that summary judgment in favor of the defendant physicians must be reversed. I must respectfully dissent insofar as the majority proposes to, *sua sponte*, take the matter one step further and render judgment in favor of the plaintiff on the issue of liability; relief which the plaintiff did not seek. In so doing, the Court is deciding an issue not directly addressed by the trial court and not necessary for the decision of the issue properly before us. The narrow issue presented for our decision is whether expert opinion is necessary to create an issue of negligence against a surgeon for inadvertently leaving a foreign object in the patient's body when the surgeon presents expert opinion that reliance on an independently conducted sponge count is sufficient to meet the standard of care. That issue, as framed by the parties, can be decided on the proposition that, on that particular question, the medical profession is not free to define its own standard, but that the issue is understandable to the ordinary layman. Thus, it is unnecessary to rebut an expert's affidavit that such reliance did meet the applicable standard of care with an expert's opinion to the contrary in order to create an unresolved issue of fact.

Having decided that issue against the defendant physicians, the work of this Court should have ended in this case. It must be remembered that there was no cross-motion for summary judgment by the plaintiff on the issue of liability. While there is authority that a court may grant summary judgment to the nonmoving party in the appropriate case, it has been said that "an appellate court should not reverse a summary judgment and order judgment for the nonmoving party on the basis of an issue that the movant had no opportunity to meet in the [trial] court." 10A Charles A. Wright, et al., *Federal Practice and Procedure: Civil 2d* § 2720 (1983). The issue of whether leaving a foreign object in a patient is negligence per se or whether such proof merely creates a prima facie case of negligence need not be decided in this case, since, in either event, summary judgment must be reversed.

That specific question has never been decided in Mississippi and is, thus, a question of first impression. *Saucier v. Ross*, cited by the majority, holds only that "*[u]nexplained*, the leaving of a four-inch rubber tube in a patient's body is negligence. . . ." *Saucier v. Ross*, 112 Miss. 306, 314, 73 So. 49, 50 (1916) (emphasis supplied). This decision, then, seems to admit the possibility of an explanation that would relieve the doctor of liability. Even though the court went on to say that "it occur[red] to [the court] that it would be very difficult for a physician to explain" away such an event, *id.,* nevertheless, I do not think, by any stretch, this idle speculation creates a rule of law recognizing negligence per se.

The other leading case on the subject in Mississippi, *Long v. Sledge*, dealt with the applicability of the

sudden emergency doctrine as a defense for leaving an eight-inch-long metal hemostat in a patient. *Long v. Sledge*, 209 So. 2d 814, 817-18 (Miss. 1968). The doctor claimed that he had placed the hemostat to stop internal bleeding, and that it had been pushed from sight while he dealt with an unforeseen emergency involving the patient's spleen. He testified to having forgotten about the hemostat after the emergency was over, and he had returned to the normal operation procedures. *Id.* at 818. The supreme court found the sudden emergency defense unavailable on these facts and concluded that the doctor was liable on two theories: (a) his failure to remember placing the clamp and (b) his failure to conduct "a proper exploration of appellee's abdomen after the operation. . . ." to discover the clamp. *Id.* at 818-19. Neither theory involves the doctrine of negligence per se. It is interesting to note that the court quotes the doctor as saying "that it was a general practice to count sponges during an operation but it was not a practice to count the clamps." *Id.* at 818. Thus, this case offers scant support, either on its facts or its rationale, for the proposition that Mississippi would hold the facts now before us establish negligence per se on the part of these defendants.

Decisions in other jurisdictions finding such circumstances to be negligence per se, while perhaps persuasive to the majority, are not dispositive in Mississippi, and there is no need to reach the question in order to resolve the issue before us. We would, in the main, do well to limit ourselves to deciding the issues assigned and argued by the parties. We do nothing to advance the general state of the law when we unnecessarily decide issues simply because the answer appears obvious. It is too often the case that the obviousness of an answer to an issue not fully argued later proves to be illusory.

We should, in my opinion, limit ourselves to reversing summary judgment and then remanding this case for further appropriate proceedings.

**FRAISER, C.J., BRIDGES, P.J., AND SOUTHWICK, J., JOIN THIS SEPARATE WRITTEN OPINION.**