# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CT-00807-SCT

*DOROTHY COLEMAN*

*v.*

*PAUL RICE, M.D. AND CARL REDDIX, M.D.*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/94 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ARTHUR F. JERNIGAN, JR. |
| | REUBEN V. ANDERSON |
| ATTORNEY FOR APPELLEES: | MILDRED M. MORRIS |
| | WALTER T. JOHNSON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/2/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. In July 1992 Dorothy Coleman underwent a hysterectomy in the Methodist Medical Center in Jackson, Mississippi. The procedure was performed by Dr. Paul Rice, chief surgeon for the procedure, and Dr. Carl Reddix, who assisted in the procedure. Coleman continued to experience complications after the surgery, and in October 1992 another operation was performed. It was found that a laparotomy sponge had been left inside Coleman during the July 1992 surgery.

¶2. On October 1, 1993, Coleman filed suit against Drs. Rice and Reddix and Methodist Medical Center in Hinds County Circuit Court, alleging that Drs. Rice and Reddix had breached their duty of care to her by leaving the sponge in her during the hysterectomy, causing serious injuries and damages. Coleman alleged that the doctrine of res ipsa loquitur was applicable in her case and that Rice and Reddix were negligent per se.

¶3. In June of 1994 Rice and Reddix filed for summary judgment. They alleged that the law in this State required that Dorothy Coleman support her allegations with expert testimony that Rice and Reddix had failed to exercise the requisite degree of care, skill and diligence ordinarily possessed by physicians. Because Rice and Reddix had supported their summary judgment motion with affidavits from medical experts stating that their actions in the treatment of Coleman did not constitute malpractice, they argued that they were entitled to judgment as a matter of law. Dr. Reddix also argued that he had left the operating room before the final closure, and should not be held liable for anything that happened after his departure from the operating room.

¶4. In her response to the summary judgment motion Dorothy Coleman denied that she was required to support her allegations with expert testimony, particularly under the facts in this case. She argued in addition that Drs. Rice and Reddix should not be able to shift blame for the sponge count to nurses or other assisting personnel, but that this was an argument to be made to a jury. She also argued that Dr. Reddix's liability, as assistant surgeon, was a factual matter for the jury, and his leaving the operating room before the closure was not determinative as a matter of law.

¶5. On July 8, 1994, the circuit court entered its order granting summary judgment in favor of Drs. Rice and Reddix. The court found "that there exist[ed] no genuine issue of material fact as to Paul Rice, M.D., and Carl Reddix, M.D. and further [found] as a matter of law that Drs. Rice and Reddix [were] not vicariously liable for the actions of any other persons . . . ." The circuit court further certified the matter as a final judgment pursuant to Miss.R.Civ.P. 54(b).

¶6. Dorothy Coleman appealed. The case was assigned to the Court of Appeals. On appeal the Court of Appeals unanimously found that "[i]f a foreign object is inadvertently left in the patient's body, there is no need for an expert in the field to establish that the surgeon was negligent." By a vote of 6-4, the Court of Appeals went on to find that (1) both doctors were negligent per se because a sponge was left inside Coleman; (2) Dr. Reddix, the assistant surgeon, was held to the same standard of liability as Dr. Rice, and the fact that Reddix may have left the operating room before the closing procedure made no difference; and (3) judgment should be rendered on liability against Drs. Rice and Reddix.

¶7. Drs. Rice and Reddix petitioned this Court for certiorari. We granted the petition, and after due consideration we affirm that portion of the Court of Appeals's opinion which reversed the circuit court's grant of summary judgment. That portion of the Court of Appeals's judgment which rendered liability in favor of Dorothy Coleman is reversed, and the matter remanded to the circuit court for proceedings consistent with this opinion.

I.

¶8. Two cases from this Court are relied upon by both parties. In *Saucier v. Ross*, 112 Miss. 306, 73 So. 49 (1916), the Court found that the circuit court erred in directing a verdict in favor of Dr. Ross where it was alleged that he had left a four-inch rubber drainage tube and gauze packing inside a patient:

> Unexplained, the leaving of a four-inch rubber tube in a patient's body by a physician is negligence, and it occurs to us that it would be very difficult for a physician to explain how he could leave a rubber tube in a patient's body, until the wound healed over same, and not be

guilty of negligence in the treatment of his patient.

*Saucier*, 112 Miss. at 314, 73 So. at 50. This Court remanded the matter to the circuit court.

¶9. The second case is *Long v. Sledge*, 209 So.2d 814 (Miss. 1968), where two doctors left an eight-inch scissors-shaped hemostat inside Mr. Sledge during a hernia operation. The doctors' defense was that they had forgotten the hemostat because of unforeseen complications during the surgery. The jury found in favor of the doctors, but the circuit court granted a j.n.o.v. in favor of Sledge as to liability. This Court affirmed, finding that the doctors "assumed the burden of proof of the sudden emergency and that it was of such nature as to exculpate them from negligence." *Long*, 209 So.2d at 818. The Court further noted: "When in the opinion of the surgeon the life of his patient is being jeopardized by the operation, he has in some courts been exculpated from negligence in failing to make a thorough exploration before closing the incision. Appellants were not faced with such an emergency nor did they so contend." *Long*, 209 So.2d at 819.

¶10. Because there appears to be some confusion as to the standard governing a medical malpractice case such as this, we announce the following for clarification. "[O]ur general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Erby v. North Mississippi Medical Center*, 654 So.2d 495, 500 (Miss. 1995). The facts presented in the limited record in this case, that of an object being left in a patient, present a suitable case for the application of the doctrine of res ipsa loquitur. *See DeLaughter v. Womack*, 250 Miss. 190, 164 So.2d 762 (1964)(doctrine of res ipsa loquitur applicable to medical malpractice cases), *overruled on other grounds by Hall v. Hilbun*, 466 So.2d 856 (Miss. 1985). This Court provided the following on the elements of the doctrine in *Read v. Southern Pine Electric Power Ass'n*, 515 So.2d 916, 920 (Miss. 1987), which include:

> 1) the instrumentality causing the damage must be under the exclusive control of the defendant,
>
> 2) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care, and
>
> 3) the occurrence must not be due to any voluntary act on the part of the plaintiff.

Where the elements of res ipsa loquitor are met, a rebuttable presumption of negligence is raised. Additionally, the requirement of "exclusive control" of the damaging instrumentality does not limit res ipsa loquitor to a single defendant; the doctrine may be applicable where authority is shared concerning the instrumentality in question.

¶11. A layman can understand, without expert testimony, that the unauthorized or unexplained leaving of an object inside a patient during surgery is negligence. Therefore, the Court of Appeals was correct in reversing summary judgment granted in favor of Drs. Rice and Reddix. Dorothy Coleman was not required to support her claim, based on res ipsa loquitur, with expert testimony.

¶12. Drs. Rice and Reddix both relied in their answers and in their motion for summary judgment on the assertion that nurses were responsible for keeping the sponge count during Coleman's surgery, and further that this is common practice. This defense is negated by our decision in *Saucier*, 112

Miss. at 314, 73 So. at 50, where this Court stated:

> It is no answer to plaintiff's suit that the rubber tube may have been left in her wound by an attendant nurse or another physician in the hospital. She testified that Dr. Ross was her physician and operated on her and attended her while in the hospital, and that the other physicians were acting under his directions in the treatment of her, and that he discharged her from the hospital at the time she left.

Though decided in 1916, *Saucier* has never been overruled and remains the law in this jurisdiction. It comports with case law from other jurisdictions which hold that while responsibility for sponge counts may be delegated to support staff, liability cannot be. A surgeon leaving a sponge inside a patient is not negligent per se, but a presumption of negligence is raised, which the surgeon may attempt to rebut or explain. *Ravi v. Coates*, 662 So.2d 218 (Ala. 1995); *Tice v. Hall*, 313 S.E.2d 565 (N.C. 1984).

## II.

¶13. Dr. Reddix also takes issue with the Court of Appeals's finding that Dr. Reddix, as assisting surgeon, was equally liable with Dr. Rice because Reddix participated in the operation. The liability of assisting surgeons presents a question of first impression in this jurisdiction. The problem is that there is little or nothing in this record on which to base a finding concerning the level of Dr. Reddix's participation. In addition to Dr. Reddix's denials of liability, and his assertions via affidavit that he left the operating room before Dorothy Coleman's incision was closed, there are two mentions of Dr. Reddix's participation in the surgery in this record. First, there is Dr. Rice's deposition testimony that there were times during the surgery when it was necessary that both surgeons perform certain aspects of the surgery at the same time. Second, there is Dr. Reddix's deposition testimony that, in a surgery such as this, before the incision is closed, one makes "a visual exploration of the surgical field . . . . The surgical field is easily visually inspected. It's open and able -- and everybody is able to see the field, everybody that's scrubbed." We decline to adopt a rule stating that an assisting surgeon's liability is equal to that of a chief surgeon regardless of the assisting surgeon's level of participation in the surgery in question. This question will require a factual determination in the circuit court. We further decline to find that the assisting surgeon's leaving the operating room before the final closure of the patient is determinative in either party's favor; it is merely one factor to be considered in the aforementioned factual determination. Finally, we decline, on this scant record, to direct a finding of liability in favor of any of the parties. The reversal of summary judgment in favor of Drs. Rice and Reddix is affirmed. The finding of liability in favor of Dorothy Coleman is reversed and this matter remanded for proceedings consistent with this opinion.

¶14. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. BANKS, J., NOT PARTICIPATING.**